1  CURTIS, MALLET-PREVOST, COLT & MOSLE, LLP
   JACQUES SEMMELMAN (*Pro Hac Vice Pending*)
2  MICHAEL R. GRAIF (NY Bar No. 2499929)
   MICHAEL J. MOSCATO (*Pro Hac Vice Pending*)
3  101 Park Avenue
   New York, New York 10178
4  Telephone:    (212) 696-6000
   mgraif@curtis.com
5  jsemmelman@curtis.com
   mmoscato@curtis.com
6
   DILLINGHAM & MURPHY, LLP
7  WILLIAM F. MURPHY, ESQ. (SBN 82482)
   J. CROSS CREASON, ESQ. (SBN 209492)
8  ANNA NAGORNAIA, ESQ. (SBN 311549)
   601 Montgomery Street, Suite 1900
9  San Francisco, California 94111
   Telephone:    (415) 397-2700
10 Facsimile:    (415) 397-3300
   wfm@dillinghammurphy.com
11 jcc@dillinghammurphy.com
   an@dillinghammurphy.com
12
   Attorneys for Plaintiff
13 The Republic of Kazakhstan

14              UNITED STATES DISTRICT COURT

15             NORTHERN DISTRICT OF CALIFORNIA

16

17 THE REPUBLIC OF KAZAKHSTAN,          CASE NO.  5:17-cv-00246

18        Plaintiff,                     **FIRST AMENDED COMPLAINT
                                         FOR DAMAGES AND
19        v.                             INJUNCTIVE RELIEF**

20 MURATBEK KETEBAEV and
   ILYAS KHRAPUNOV,
21
          Defendants.
22

23

24

25
          Plaintiff the Republic of Kazakhstan ("Plaintiff"), as and for its Amended Complaint against
26
   Muratbek Ketebaev, Ilyas Khrapunov, and fictitiously named defendants Does 1-100 (collectively
27
   with Muratbek Ketebaev and Ilyas Khrapunov, the "Defendants") alleges as follows:
28

**NATURE OF THE ACTION**

1.      This is a civil action for injunctive relief and damages arising under The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Stored Communications Act, 18 U.S.C. §§ 2701 et seq.  As alleged more fully below, Defendants, acting in concert, planned, organized, financed, and executed multiple hackings of Gmail and Hotmail accounts and computers used by officials of the government of the Republic of Kazakhstan to conduct government business.  Defendants stole thousands of sensitive, proprietary, confidential and privileged government emails and other documents (the "Stolen Materials").

2.      Defendants have uploaded onto the internet thousands of documents from among the Stolen Materials.

3.      As set forth below in greater detail, Defendant Muratbek Ketebaev a/k/a Ketebayev ("Ketebaev") has invoked his right against self-incrimination when questioned under oath about his involvement in the hackings.

**THE PARTIES**

4.      Plaintiff is a sovereign nation in Central Asia.

5.      Plaintiff is informed and believes, and on that basis alleges and avers, that in engaging in the wrongful acts alleged in this Complaint, Defendants Ketebaev and Khrapunov acted in concert and in conspiracy with other persons or entities, whose identities and locations are presently unknown to Plaintiff and its counsel.  Once the identities and locations of such persons and entities are ascertained by Plaintiff, Plaintiff will seek leave of Court to amend this Complaint pursuant to Rule 15 of the Federal Rules of Civil Procedure to add such persons and entities as named defendants in this action.

**JURISDICTION AND VENUE**

6.      This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331, as the action arises under the laws of the United States.

7.      This Court has personal jurisdiction over the Defendants as a result of the Defendants' unauthorized access into, and misappropriation of information from, a "protected computer" as defined in 18 U.S.C. § 1030(e)(2)(B) which is used in and affects interstate or foreign

1  commerce and communication, and as a result of Defendants' intentional and wrongful conduct

2  purposefully directed at and causing injurious effect in the United States, including in the Northern

3  District of California.

4       8.    In the alternative, the Court has personal jurisdiction over the Defendants pursuant to

5  Fed. R. Civ. P. 4(k)(2).

6       9.    Venue is proper in this judicial district pursuant to 28 U.S.C. § 1391(b).

7  **FACTS**

8       10.    On or about January 21, 2015, Plaintiff learned of unauthorized public postings of

9  certain of its confidential government documents, and thus became aware that it had been the victim

10  of computer hackings.  The hackings included obtaining access without authorization to Gmail and

11  Hotmail accounts (collectively, the "Hacked Accounts") and computers used by officials of the

12  Republic of Kazakhstan to conduct government business.

13       11.    Defendants, acting in concert and in conspiracy with other presently unknown

14  persons or entities, planned, organized, financed, and executed the hackings of the Hacked

15  Accounts and computers, and thereby obtained the Stolen Materials.

16       12.    Defendants perpetrated a series of such hackings over a period of months.

17       13.    Upon information and belief, in a series of uploadings over a period of months,

18  Defendants and/or one or more of their co-conspirators uploaded onto the internet thousands of

19  misappropriated government emails and other documents from among the Stolen Materials.  Many

20  of these emails and other documents contain sensitive, proprietary, and highly confidential

21  governmental communications.

22  **The Hacked Accounts**

23       14.    Gmail is a cloud-based email service provided by Google Inc. ("Google").  Google is

24  renowned internationally as a company based in the United States.  Google is headquartered in

25  Mountain View, California, within the Northern District of California.

26       15.    Hotmail (also known as "Outlook") is a cloud-based email service provided by

27  Microsoft Inc. ("Microsoft").  Microsoft is renowned internationally as a company based in the

28  United States.  Microsoft is headquartered in Redmond, Washington.

16.     A provider of cloud-based email services stores the contents of all of its users' emails on a network of servers that are accessible to its users from anywhere that an internet connection is available.  While the servers can be located anywhere in the world, the provider of the services is able to access and manage the emails wherever they are located, and therefore has possession, custody and control of all of its users' emails.

17.     Accordingly, anyone who, without authorization, accesses email accounts established with a cloud-based email service, is accessing, without authorization, emails within the possession, custody and control of the provider of the cloud-based email service.

18.     The Hacked Accounts were hosted by Google and Microsoft, as part of their cloud-based email services, on computer servers that are "protected computers" under 18 U.S.C. § 1030(e)(2)(B).  The servers that hosted the Hacked Accounts are connected to the internet and controlled by Google and Microsoft, and thus are used in and affect interstate or foreign commerce or communication.

19.     By accessing the Hacked Accounts without authorization, Defendants Ketebaev and Khrapunov and their co-conspirators accessed emails within the possession, custody, and control of Google and Microsoft, without authorization.

20.     Defendants Ketebaev and Khrapunov and their co-conspirators knowingly and intentionally accessed protected computer servers of Google and Microsoft, without authorization.

21.     Defendants Ketebaev and Khrapunov and their co-conspirators knew that without authorization they were accessing protected computer servers of Google and Microsoft, both of which are internationally-renowned U.S. companies.

22.     Defendants Ketebaev and Khrapunov and their co-conspirators intended their actions to have an effect on, and cause harm to, persons in the United States, including in the Northern District of California where Google is headquartered and where effects of the wrongful access would be felt.

23.     When Defendant Ketebaev was asked at deposition under oath whether he was involved in any manner in the hacking of the Hacked Accounts, he invoked his right not to incriminate himself.

**The Mega Website**

24.     Twenty-three archives of Stolen Materials (the "Mega Archives") have been uploaded onto https://mega.nz (the "Mega Website"), a website maintained by Mega Limited ("Mega"), a provider of cloud-based services based in New Zealand.

25.     Each of the Mega Archives contains thousands of documents.

26.     Most of the Mega Archives contain emails hacked from the Gmail or Hotmail account of a particular custodian, i.e., a specific government official (each one a "Mega Custodian").

27.     The uploading of the Mega Archives was done in stages.  In early August 2014, someone (upon information and belief, Defendants Ketebaev and Khrapunov and/or one or more of their co-conspirators) created an account with Mega and uploaded the first of the Mega Archives. Since then, an additional 22 Mega Archives have been uploaded on various occasions, at least as recently as April 28, 2015.

28.     Given the sheer volume of documents in each of the Mega Archives, it would be extremely unlikely (if not impossible) for someone who is not a hacker or working directly with a hacker to have somehow independently collated such a large volume of Stolen Materials and catalogued them by Mega Custodian.  Upon information and belief, the Mega Archives were uploaded by Defendants Ketebaev and Khrapunov and/or one or more of their co-conspirators.

29.     All 21 Mega Archives that were still active as of July 15, 2016 were uploaded by a single Mega account holder.

30.     When Defendant Ketebaev was asked under oath at deposition whether he had ever uploaded anything onto the Mega Website, he invoked his right not to incriminate himself.

**The Kazaword Website**

31.     On or before August 8, 2014, a website was created under the URL https://kazaword.wordpress.com (the "Kazaword Website").  Upon information and belief, the Kazaword Website was created by Defendants Ketebaev and Khrapunov and/or one or more of their co-conspirators.  On or about August 8, 2014, a hyperlink was placed on the Kazaword Website that enabled a user to access a Mega Archive.

32.    Over time, as additional Mega Archives were uploaded onto the Mega Website, hyperlinks to each of the Mega Archives were added to the Kazaword Website.  Each hyperlink enabled a user to access a corresponding Mega Archive.  Upon information and belief, the hyperlinks were added to the Kazaword Website by Defendants Ketebaev and Khrapunov and/or one or more of their co-conspirators.

33.    The Kazaword Website does not describe or comment on the content of the Mega Archives, except in the most perfunctory manner.  As a result, the Kazaword Website is not readily found using Google or a comparable search engine.  To access the Mega Archives through the hyperlinks on the Kazaword Website, a user must first be aware of the existence of the Kazaword Website.

34.    When Defendant Ketebaev was asked under oath at deposition whether he was involved in any way in setting up the Kazaword Website, he invoked his right not to incriminate himself.

**Other Websites That Post or Reference Stolen Materials**

35.    Documents from among the Stolen Materials have also been posted or otherwise referenced on https://www.facebook.com/mur.ketebayev (the "Ketebaev Facebook Page"); www.respublika-kaz.info (the "Respublika Website"); and https://www.facebook.com/respublika.kaz.info (the "Respublika Facebook Page").

36.    The Ketebaev Facebook Page is the personal Facebook Page of Defendant Ketebaev.

37.    Defendant Ketebaev is a poster and user of documents believed to be Stolen Materials, some of which are apparently not available in the Mega Archives. For example, on February 5, 2015, a post appeared on the Ketebaev Facebook Page that contained Stolen Materials that consisted of emails and other documents sent to and from Vladimir Shkolnik, at relevant times the Minister of Energy of the Republic of Kazakhstan. Mr. Shkolnik is not a Mega Custodian, and the emails and other documents are not believed to be in any of the Mega Archives.  The email address for Mr. Shkolnik that appears in the post was neither a Gmail address nor a Hotmail address.

38.     At relevant times, the Respublika Website has been operated by LLC Media-Consult, an entity owned by Irina Petrushova and her brother Alexander Petrushov.  Irina Petrushova founded and has served as editor-in-chief of the Respublika Website.  Irina Petrushova is the wife of Defendant Ketebaev.

39.     Documents from among the Stolen Materials have been posted or referenced on the Respublika Website and on the Respublika Facebook Page.

40.     At relevant times, IRC Company, Inc. d/b/a Black Lotus Communications ("Black Lotus"), which is based in San Francisco, CA, was the web host for the Respublika Website.

41.     Defendant Ketebaev has been listed in the files of Black Lotus as the first primary contact for the entity that at relevant times operated the Respublika Website.

**The Two Posts**

42.     On February 11, 2015, and on February 19, 2015, articles were posted on the Respublika Facebook Page that contained screenshots of privileged and confidential attorney-client communications sent to officials of the Republic of Kazakhstan by Curtis, Mallet-Prevost, Colt & Mosle LLP or by Gomez-Acebo & Pombo, a global law firm headquartered in Spain that was performing legal services on behalf of, and providing legal advice to, the Republic of Kazakhstan (the "Two Posts").

43.     The screenshots in the Two Posts display, inter alia, Gmail and Hotmail addresses used by an official of the Republic of Kazakhstan. Upon information and belief, these documents were obtained by Defendants Ketebaev and Khrapunov and/or one or more of their co-conspirators through their hackings of the Gmail and Hotmail accounts of that official.

**The S.D.N.Y. Case**

44.     On March 12, 2015, Plaintiff filed a lawsuit in the United States District Court for the Southern District of New York against fictitiously named Does 1-100, inclusive (the "S.D.N.Y. Case").  See The Republic of Kazakhstan v. Does 1-100, Inclusive, 15 Civ. 1900 (ER) (S.D.N.Y.).

45.     On March 13, 2015, the Court in the S.D.N.Y. Case issued a Temporary Restraining Order (the "TRO").

46.     In accordance with the Court's order regarding service of the TRO, on March 13, 2015 counsel for Plaintiff posted "Comments" on the Respublika Facebook Page, alerting Respublika to the litigation and to the TRO, and including a link to a special-purpose Facebook page that Plaintiff's counsel created pursuant to the TRO that contained PDF copies of the Complaint, the TRO, and the supporting papers.

47.     Sometime between March 13 and March 18, 2015, the Two Posts were removed from the Respublika Facebook Page.

48.     According to Facebook, Inc., only the administrator of a Facebook page has the ability to remove a post.

49.     The Court in the S.D.N.Y. Case authorized certain third-party discovery.

50.     No defendant was named in the S.D.N.Y. Case.  On January 17, 2017, Plaintiff filed a notice of voluntary dismissal without prejudice in the S.D.N.Y. Case.

**The KazNet Articles**

51.     The Ketebaev Facebook Page has posted links to a series of articles about KazNet (a company in Kazakhstan) titled "Who is behind KazNet?" (the "KazNet Articles").

52.     The KazNet Articles contain screenshots of, and excerpts from, documents from among the Stolen Materials that do not appear to be in any of the Mega Archives.

53.     The links on the Ketebaev Facebook Page are to PDFs of the KazNet Articles that have been uploaded onto the Mega Website (separate from the Mega Archives).

54.     Upon information and belief, the KazNet Articles have been uploaded to the Mega Website by Defendants Ketebaev and Khrapunov and/or one or more of their co-conspirators.

**Ketebaev Invokes His Right Against Self-Incrimination**

55.     On May 22, 2015, Plaintiff filed a motion in the S.D.N.Y. Case, pursuant to Fed. R. Civ. P. 28(b) and The Hague Convention on the Taking of Evidence Abroad in Civil or Commercial Matters, March 18, 1970, 23 U.S.T. 2555, T.I.A.S. No. 7444 (reprinted at 28 U.S.C. § 1781) for the issuance of a Letter of Request to take the deposition of Defendant Ketebaev in Poland, where he resides.

56.   By Order dated October 28, 2015, the Court in the S.D.N.Y. Case granted the motion (as amended).

57.   Pursuant to the Letter of Request, on June 7, 2016, Defendant Ketebaev was deposed by counsel for the Plaintiff in the District Court for the Śródmieście Borough of the Capital City of Warsaw, Poland.  A Polish judge (Hon. Małgorzata Klonowska) presided over the deposition. Ketebaev's primary language is said to be Russian.  The Court supplied a Polish-Russian interpreter. Also present was a Polish-English interpreter.

58.   At the outset of the deposition, Defendant Ketebaev announced on the record that he was refusing to testify.  The Court instructed the Polish-Russian interpreter to translate for Ketebaev Article 261 of the Code of Civil Procedure of the Republic of Poland, which sets forth all of the grounds upon which a witness may lawfully refuse to testify.  Paragraph 2 of that Article provides, in relevant part: "A witness may refuse to answer a question if his testimony could expose him … to criminal liability …"

59.   Defendant Ketebaev again stated to the Court on the record that he was refusing to testify.  Asked by the Court to identify the specific ground in Article 261 upon which he based his refusal to testify, Ketebaev invoked Paragraph 2 of Article 261, and stated his fear of exposure to criminal liability.

60.   The Court instructed Defendant Ketebaev that he had the right to invoke this ground (i.e., self-incrimination) as a basis to refuse to answer questions, but that he could not do so on an anticipatory basis without first hearing each question.  The Court stated to Ketebaev that "you are asked a question and then you refuse, if you feel that you may be exposed to criminal liability, but you need to find out what the question is."  The Court then administered the oath to Ketebaev.

61.   Counsel for the Plaintiff asked Defendant Ketebaev a series of questions related to the hackings.  In response to virtually every question, Ketebaev invoked his right against self-incrimination under Article 261, paragraph 2, and refused to answer the question on that basis. Such questions included:

a.   "Were you involved in any manner in the hacking of Gmail and Hotmail accounts used by officials of the government of Kazakhstan?"

b.      "Were you involved in financing of the hacking of Gmail and Hotmail accounts used by officials of the government of Kazakhstan?"

c.      "Were you involved in the advance planning of any of the hackings that were perpetrated either on - or against the computer servers of the Republic of Kazakhstan or the Gmail and Hotmail accounts used by officials of the Government of Kazakhstan?"

d.      "Mr. Ketebaev, could you tell us please who planned the hackings of the computer servers of the Republic of Kazakhstan and of the Gmail and Hotmail accounts used by officials of the Republic of Kazakhstan?"

e.      "Could you please tell us who financed the hackings of the computer servers of the Republic of Kazakhstan and of the Gmail and Hotmail accounts of officials of the government of Kazakhstan?"

f.      "Could you tell us please the identity of the hacker or the hackers who actually hacked the computer servers of the Republic of Kazakhstan and the Gmail and the Hotmail accounts used by officials of the government of Kazakhstan?"

g.      "Did you know in advance of any of the hackings, that the hackings were going to take place?"

h.      "Were you involved in any way in setting up a website called Kazaword?"

i.      "Are you familiar with a website operated by a company called Mega?"

j.      "Have you ever uploaded anything onto the website operated by Mega?"

62.     As noted above, while under oath, Defendant Ketebaev invoked his right against self-incrimination as the ground for his refusal to answer every single one of these questions.

## **Khrapunov States That He Orchestrated Numerous Hackings**

63.     A confidential witness has stated, under oath, that he was present at a meeting with Defendant Khrapunov in Geneva, Switzerland in or around November of 2013.

64.     At the meeting, Defendant Khrapunov stated that he had orchestrated multiple hackings by retaining the services of a hacking firm based in Israel.  These hackings included the hacking of the cell phone and email account of the French prosecutor handling the extradition case against Mukhtar Ablyazov, Defendant Khrapunov's father-in-law.  Defendant Khrapunov also

1    stated that he had orchestrated the hacking of the email accounts of numerous employees of the

2    Republic of Kazakhstan.

3         65.     According to the confidential witness, the hacked materials were delivered to

4    Defendant Khrapunov.

**FIRST CAUSE OF ACTION**

**Violation of The Computer Fraud and Abuse Act**

**(18 U.S.C. § 1030)**

8         66.     Plaintiff incorporates by reference as though fully set forth herein the allegations

9    contained in paragraphs 1 through 65 above.

10        67.     Defendants Ketebaev and Khrapunov and their co-conspirators violated The

11   Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(2)(C), by intentionally accessing protected

12   computers without authorization, and by obtaining the Stolen Materials from such protected

13   computers.

14        68.     Defendants Ketebaev and Khrapunov and their co-conspirators violated The

15   Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(B), by intentionally accessing protected

16   computers without authorization, and as a result of such conduct, recklessly causing damage to

17   Plaintiff.

18        69.     Defendants Ketebaev and Khrapunov and their co-conspirators violated The

19   Computer Fraud and Abuse Act, 18 U.S.C. § 1030(a)(5)(C), by intentionally accessing protected

20   computers without authorization, and as a result of such conduct, causing damage and loss to

21   Plaintiff.

22        70.     Upon information and belief, Defendants Ketebaev and Khrapunov and the other,

23   currently unknown, persons and entities acted jointly and in concert with one another.

24        71.     18 U.S.C. § 1030(g) of the Computer Fraud and Abuse Act provides that any

25   "person who suffers damage or loss by reason of a violation of this section may maintain a civil

26   action against the violator to obtain compensatory damages and injunctive relief or other equitable

27   relief."  Pursuant to 18 U.S.C. §§ 1030(g), (a)(2)(C), and (c)(4)(A)(i)(I) of the Computer Fraud and

28

1  Abuse Act, a civil action may be brought if the conduct involves a loss during any one-year period

2  aggregating at least $5,000 in value.

3  72.  As a proximate result of the violations of the Computer Fraud and Abuse Act by

4  Defendants Ketebaev and Khrapunov and their co-conspirators, Plaintiff has suffered damage and

5  loss in excess of $5,000 within a one-year period, consisting of expenses (not including attorneys'

6  fees) to investigate the hackings and to control and remediate the damage Defendants Ketebaev and

7  Khrapunov and their co-conspirators caused.

8  73.  Plaintiff has suffered and continues to suffer damage and loss by reason of

9  Defendants Ketebaev's and Khrapunov's and their co-conspirators' wrongful conduct.

10  74.  Plaintiff has been and continues to be irreparably harmed by the ongoing use and

11  dissemination of documents from among the Stolen Materials.

12  75.  As a proximate result of these violations, Plaintiff has suffered damage and loss in

13  an amount to be proven at trial, and, absent injunctive relief, faces likely irreparable harm.

14  76.  Under 18 U.S.C. § 1030(g) of the Computer Fraud and Abuse Act, Plaintiff is

15  entitled to an award of compensatory damages and injunctive and equitable relief.

16  77.  Defendants Ketebaev and Khrapunov and their co-conspirators are not entitled to

17  benefit from their own wrongdoing by further disclosing, disseminating, posting, displaying,

18  sharing, distributing, hosting, copying, viewing, accessing, providing access to or making available

19  to anyone any documents from among the Stolen Materials.

20  78.  The Court should therefore enjoin any further use, disclosure, dissemination,

21  posting, display, sharing, distribution, hosting, copying, viewing, accessing, provision of access to

22  or making available to anyone, in any manner whatsoever, any of the Stolen Materials.

23  79.  The Court should order the disabling of the Kazaword Website, the deletion of the

24  Mega Archives and the KazNet Articles, and the deletion of hyperlinks to the Mega Archives and to

25  the KazNet Articles.

26  80.  The Court should also order the deletion of posts that contain or reference any

27  documents from among the Stolen Materials, and the deletion of hyperlinks to files that contain or

28  reference any documents from among the Stolen Materials.

**SECOND CAUSE OF ACTION**

**Violation of The Stored Communications Act**

**(18 U.S.C. §§ 2701 ET SEQ.)**

81.    Plaintiff incorporates by reference as though fully set forth herein the allegations contained in paragraphs 1 through 65 above.

82.    Defendants Ketebaev and Khrapunov and their co-conspirators violated 18 U.S.C. § 2701(a)(1) of the Stored Communications Act by knowingly and intentionally accessing without authorization a facility through which an electronic communication service is provided and thereby obtaining documents from among the Stolen Materials that included wire or electronic communications, while such communications were in electronic storage in such system.

83.    Defendants Ketebaev and Khrapunov and their co-conspirators knowingly and intentionally accessed without authorization the Hacked Accounts.  To access the Hacked Accounts, Defendant Ketebaev and his co-conspirators accessed servers of Google and Microsoft, each of which is a "facility" within the meaning of 18 U.S.C. § 2701(a)(1) of the Stored Communications Act.  Defendants Ketebaev and Khrapunov and their co-conspirators had no authorization to access any of these servers or any of the Hacked Accounts.

84.    The Stolen Materials obtained by Defendants Ketebaev and Khrapunov and their co-conspirators from the Hacked Accounts were in electronic storage in the above-mentioned servers at the time Defendants Ketebaev and Khrapunov and their co-conspirators accessed them without authorization.

85.    The actions of Defendants Ketebaev and Khrapunov and their co-conspirators violated the Stored Communications Act and were willful and intentional.  Defendants Ketebaev and Khrapunov and their co-conspirators, despite knowing that their access to the above-mentioned servers were not authorized, continued over a period of months to repeatedly access and obtain electronic documents.

86.    Upon information and belief, Defendants Ketebaev and Khrapunov and their co-conspirators acted jointly and in concert with one another.

1  87.   18 U.S.C. § 2707(a) of the Stored Communications Act provides that any "person

2  aggrieved by any violation of this chapter in which the conduct constituting the violation is engaged

3  in with a knowing or intentional state of mind may, in a civil action, recover from the person or

4  entity, other than the United States, which engaged in that violation such relief as may be

5  appropriate."

6  88.   18 U.S.C. § 2707(b) and (c) of the Stored Communications Act provide that "[i]n a

7  civil action under this section, appropriate relief" may include equitable relief, an award of

8  damages, reasonable attorneys' fees, and litigation costs reasonably incurred.  If the violation is

9  willful or intentional, the court may also assess punitive damages.

10  89.   Plaintiff has been and continues to be irreparably harmed by the illegal

11  misappropriation and ongoing public dissemination of documents from among the Stolen Materials.

12  90.   Plaintiff has suffered and continues to suffer damage and loss by reason of the

13  wrongful conduct of Defendants Ketebaev and Khrapunov and their co-conspirators.

14  91.   As a proximate result of these violations, Plaintiff has suffered damage and loss in

15  an amount to be proven at trial, and, absent injunctive relief, faces likely irreparable harm.

16  92.   Under 18 U.S.C. §§ 2707(a), (b) and (c) of the Stored Communications Act, Plaintiff

17  is entitled to an award of compensatory and punitive damages, an award of reasonable attorneys'

18  fees and expenses, and injunctive relief.

19  93.   Defendants Ketebaev and Khrapunov and their co-conspirators are not entitled to

20  benefit from their own wrongdoing by further disclosing, disseminating, posting, displaying,

21  sharing, distributing, hosting, copying, viewing, accessing, providing access to or making available

22  to anyone any of the Stolen Materials obtained from the Hacked Accounts.

23  94.   The Court should therefore enjoin any further use, disclosure, dissemination,

24  posting, display, sharing, distribution, hosting, copying, viewing, accessing, provision of access to

25  or making available to anyone, in any manner whatsoever, any documents from among the Stolen

26  Materials obtained from the Hacked Accounts.

27

28

95.     The Court should order the disabling of the Kazaword Website, the deletion of the Mega Archives and the KazNet Articles, and the deletion of hyperlinks to the Mega Archives and to the KazNet Articles.

96.     The Court should also order the deletion of posts that contain or reference any documents from among the Stolen Materials obtained from the Hacked Accounts, and the deletion of hyperlinks to files that contain or reference any documents from among the Stolen Materials obtained from the Hacked Accounts.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff the Republic of Kazakhstan demands judgment against the Defendants jointly and severally as follows:

(a)     Adjudging that the Defendants' actions violated The Computer Fraud and Abuse Act, 18 U.S.C. § 1030, and the Stored Communications Act, 18 U.S.C. §§ 2701 et seq.;

(b)      Enjoining the Defendants, their affiliates, employees, agents, and representatives, and all persons acting in concert or participation with Defendants, from using, disclosing, disseminating, posting, displaying, sharing, distributing, hosting, copying, viewing, accessing, providing access to or making available to anyone, in any manner whatsoever, any of the Stolen Materials;

(c)     Ordering the disabling of the Kazaword Website and of all hyperlinks to the Mega Archives;

(d)     Ordering the deletion of the Mega Archives from the Mega Website;

(e)     Ordering the deletion of the KazNet Articles from the Mega Website;

(f)     Ordering the deletion from the Ketebaev Facebook Page of all posts that contain or reference any documents from among the Stolen Materials, and of all hyperlinks to files on the Mega Website that contain or reference any documents from among the Stolen Materials, including hyperlinks to the KazNet Articles;

(g)      Awarding Plaintiff compensatory and punitive damages in an amount to be determined at trial;

(h)     Awarding Plaintiff its costs and reasonable attorneys' fees; and

1         (i)    Awarding such other and further relief as the Court deems just and proper.

2    Dated:  January 20, 2017

3

4    Respectfully submitted,

5                                        CURTIS, MALLET-PREVOST,
                                       COLT & MOSLE LLP

6                                        JACQUES SEMMELMAN
                                    MICHAEL R. GRAIF

7                                        MICHAEL J. MOSCATO

8                                        DILLINGHAM & MURPHY, LLP

9                                        WILLIAM F. MURPHY
                                    J. CROSS CREASON

10                                       ANNA NAGORNAIA

11

12

13                                  By   /s/ William F. Murphy
                                    Attorneys for Plaintiff the Republic

14                                       of Kazakhstan

15

16

17

18

19

20

21

22

23

24

25

26

27

28